UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: | ) ) ) |
|  | Misc. No. 08-442 (TFH)[1] |
| GUANTANAMO BAY DETAINEE LITIGATION | ) ) Civil Action Nos. |

02-CV-0828, 04-CV-1164, 04-CV-1166, 04-CV-1194,
04-CV-1254, 04-CV-2022, 04-CV-2215, 05-CV-0023,
05-CV-0280, 05-CV-0329, 05-CV-0359, 05-CV-0392,
05-CV-0429, 05-CV-0492, 05-CV-0520, 05-CV-0569,
05-CV-0634, 05-CV-0748, 05-CV-0764, 05-CV-0877,
05-CV-0883, 05-CV-0892, 05-CV-0999, 05-CV-1048,
05-CV-1124, 05-CV-1189, 05-CV-1244, 05-CV-1312,
05-CV-1353, 05-CV-1429, 05-CV-1457, 05-CV-1490,
05-CV-1497, 05-CV-1504, 05-CV-1506, 05-CV-1509,
05-CV-1555, 05-CV-1592, 05-CV-1607, 05-CV-1623,
05-CV-1638, 05-CV-1645, 05-CV-1646, 05-CV-1971,
05-CV-1983, 05-CV-2088, 05-CV-2104, 05-CV-2185,
05-CV-2186, 05-CV-2199, 05-CV-2223, 05-CV-2249,
05-CV-2348, 05-CV-2349, 05-CV-2367, 05-CV-2371,
05-CV-2379, 05-CV-2380, 05-CV-2384, 05-CV-2385,
05-CV-2386, 05-CV-2387, 05-CV-2479, 06-CV-1668,
06-CV-1690, 06-CV-1691, 06-CV1725,  06-CV-1765,
06-CV-1766, 06-CV-1767, 07-CV-1710, 07-CV-2337,
07-CV-2338, 08-CV-1101, 08-CV-1173, 08-CV-1207,
08-CV-1228, 08-CV-1232, 08-CV-1233, 08-CV-1234,
08-CV-1235, 08-CV-1236, 08-CC-1237, 08-CV-1238,
08-CV-1360, 08-CV-1440, 08-CV-1645, 08-CV-1805,
08-CV-1828, 08-CV-1923, 08-CV-2019, 08-CV-2083,
09-CV-0031, 09-CV-0745, 09-CV-0873, 09-CV-0904,
09-CV-1385, 09-CV-1462, 09-CV-2368, 10-CV-0407,
10-CV-1020, 10-CV-1411, 11-CV-923

**NOTICE OF PRIVILEGE TEAM REVIEW OF DOCUMENTS
AND MATERIALS RECOVERED FROM JTF-GTMO CAMP 6**

---

[1] Respondents have filed this notice in all Guantanamo Bay habeas cases in which at least one petitioner is currently held at Guantanamo Bay, whether the case remains pending or not.

1

Respondents hereby provide notice that the Department of Defense intends to have the Department of Defense Habeas Privilege Team review certain documents and materials collected from the Joint Task Force-Guantanamo's Camp 6 detention facility in order to facilitate the return of materials, where appropriate, to the Guantanamo Bay detainee to whom the materials belong, where possible.

On April 13, 2013, upon order of the Commander, JTF-GTMO, detainees residing in Camp 6 were transitioned from communal to single-cell living to ensure the health and security of the detainees. This action was taken in response to efforts by detainees to limit the guard force's ability to observe the detainees, including by covering surveillance cameras, windows, sally port fences, and glass partitions. In order to reestablish proper observation of the detainees following numerous requests that the detainees uncover these areas, the guards entered the Camp 6 communal living spaces and recreation yards to transition detainees into single cells; to remove obstructions to cameras, windows, and partitions; and to allow medical personnel to conduct individual assessments of each detainee due to an ongoing hunger strike.[2]

At the time of the transition operation detainee materials were comingled in the communal areas and individual cells of Camp 6. Prior to the transition operation, detainees residing in Camp 6 were authorized to congregate in designated communal areas and further permitted to bring authorized documents and materials with them to these areas. Many of the detainees routinely left materials in the communal areas, and consequently, those materials were still in the communal areas at the time of the transition operation. The materials in the communal areas were not organized in any identifiable way, with some materials in plastic

---

[2] To date, because they have complied with camp rules, approximately 100 detainees in Camp 6 have been returned to communal living since the April transition to single-cell living.

storage bins and other materials simply loose on the floor or on tables.

Additionally, the individual cells within Camp 6 were open for a majority of hours each day, thereby allowing detainees to come and go into each other's cells as well as the communal areas. Detainees were permitted to store materials in their cells either loosely or inside plastic storage bins. Every detainee in Camp 6 was assigned an individual cell, but because of the communal nature of the living environment, detainees regularly brought materials into other detainees' cells and in some instances would occupy cells not assigned to them when a detainee assigned to that cell moved to a different camp. Due to these and other factors, materials belonging to multiple detainees were comingled in individual cells in Camp 6.

During the transition operation JTF-GTMO guards collected materials from the common areas and individual cells for temporary storage while Camp 6 was appropriately secured and cleaned in order to restore safe and hygienic conditions. [3] During this process, guards searched for and removed any unauthorized physical contraband, to include metal objects or anything that could be weaponized, that was discovered. Additionally, guards attempted to determine ownership of the materials in the cells and common areas so they could return the materials to the appropriate detainee. However, because of the likelihood that the materials included legal materials or attorney-client communications, guards did not read the materials or inspect them on an item-by-item basis. Instead, guards conducted a brief, cursory inspection of the plastic bins and loose materials in an attempt to identify the detainee to whom the materials belonged. If the guards could not identify the owner of the materials after a cursory inspection or if they

---

[3] While the cells were cleaned, detainees were moved to other detention areas, such as a nearby cell block or recreation area. Some detainees remained in their cells, which were locked down, while the common areas adjacent to their cell blocks were cleaned.

3

identified comingled materials belonging to multiple detainees that required further review, those

materials were placed aside for storage and further review.[4]  With the exception of the two

categories of materials noted above – physical contraband and materials whose ownership could

not be determined without further review – JTF GTMO has returned, or attempted to return, to

detainees the materials collected during the Camp 6 transition.  To date, JTF-GTMO has

successfully returned to detainees approximately 185 bins of materials.[5]

Although the majority of materials have been returned to the detainees, JTF-GTMO is

currently in possession of approximately one hundred and five (105) bins[6] and three (3) bags of

documents and materials for which ownership cannot be determined without further review.

These documents and materials were collected from the communal areas and cells of Camp 6

during the April 2013 transition operation and from the communal area of one cell block of

Camp 6 during a separate security operation in February 2013.[7]  These materials have been held

and maintained exclusively by JTF-GTMO's Joint Detention Group (JDG).  Other than the

review described above, which was conducted entirely by JDG guards and officials, the materials

have not been shared with other JTF-GTMO components, including any of JTF-GTMO's

intelligence components, or outside government agencies.  Further, the collected materials have

---

[4] For example, when guards discovered a plastic bin in the communal area with materials associated with multiple detainees, that bin was placed aside for further review.  Similarly, when guards found a bin inside a cell marked with an ISN of a detainee not assigned to that cell, the guards removed the entire bin and placed it aside.

[5] Five detainees initially refused to accept their materials back. The nine bins of materials belonging to these detainees are also among the materials set aside for further review.

[6]  The bins are clear plastic bins that one can see through.  The bins vary in size with the majority being 6-10 inches tall and 2x3 feet.

[7]  Approximately twelve to fifteen of the one hundred and five bins were collected in the February 2013 security operation.

not been destroyed, translated, scanned, copied, or otherwise reproduced.[8]  JTF-GTMO

recognizes that some of the materials may be legal materials or attorney-client communications,

and JTF-GTMO has not read or reviewed the materials other than as described above, that is, to

remove physical contraband or to attempt to identify the proper owner of the materials in a

cursory fashion.  Out of an abundance of caution that the documents collected may include legal

materials or attorney-client communications, and to respect the potential sensitivity of the

recovered materials, the Department of Defense will have the Department of Defense Habeas

Privilege Team inspect and review the materials currently in storage in an attempt to determine

the proper owners of the recovered materials.  *See* Protective Order And Procedures For Counsel

Access To Detainees At The United States Naval Station, Guantanamo Bay, Cuba, 577 F. Supp.

2d 143, 146, 156-163 (D.D.C. 2008) (defining privilege team and explaining duties).

The Privilege Team will conduct a review of the materials and separate them into the

following categories:

1.  Legal and non-legal materials that can be identified as belonging to a specific detainee
    and that are not contraband;

2.  Legal and non-legal materials that can be identified as pertaining to a specific attorney
    (when they cannot be identified as belonging to a specific detainee) and that are not
    contraband;

3.  Legal and non-legal materials for which ownership cannot be determined and that are not
    contraband;

---

[8]  Unauthorized physical contraband was destroyed or otherwise disposed of during the transition
operation.

4.  Contraband (*See, e.g.*, Protective Order And Procedures For Counsel Access To Detainees At The United States Naval Station, Guantanamo Bay, Cuba, ¶ II.D.12.g, ¶ J.33, 577 F. Supp. 2d 143 (D.D.C. 2008));

5.  Documents requiring translation to determine ownership.

Legal and non-legal materials that can be attributed to a specific detainee and that are not contraband will be placed in sealed envelopes or appropriate sealed containers marked with that detainee's ISN number.  Any non-contraband item that the Privilege Team can associate with a particular detainee, whether legal or non-legal, will be returned directly to that detainee in sealed envelopes or appropriate sealed containers without further review.  The materials will be given to JDG personnel for immediate return to the appropriate detainee, without further review, on a rolling basis as the Privilege Team completes its review.  In the event non-contraband materials cannot be associated with a specific detainee, the Privilege Team will attempt to determine whether the materials bear the name of an attorney.  In instances in which the Privilege Team can associate the item with an attorney, but not a specific detainee, the Privilege Team will place the item, whether legal or non-legal, in an appropriate sealed envelope or sealed container and process it for return to the attorney at the Secure Facility.

The sole focus of the Privilege Team's review will be to determine ownership of the materials, while separating out any contraband, and the Privilege Team will not make judgments on whether materials are legal or non-legal mail as defined by the Protective Order.  The goal of the Privilege Team is return as many materials as possible to the detainees and their attorneys as soon as practicable.[9]

---

[9] Items that appear to be legal mail associated with military commissions proceedings will be returned to the detainee or military commission attorney if identifiable.

If the Privilege Team identifies contraband or materials, whether legal or non-legal, that cannot be associated with a particular detainee or attorney, the Privilege Team will prepare a log describing the items and provide the log to Petitioners' counsel at the secure facility for their review.  The purpose of the log will be twofold.  First, the log will allow Petitioner's counsel to receive a description of all items that the Privilege Team has identified as contraband so that counsel may discuss any disagreement with the characterization of these items with the Privilege Team prior to their return to JTF-GTMO personnel.[10]  Second, the log will allow Petitioner's counsel to review any items that the Privilege Team cannot associate with a particular detainee or attorney so that counsel can provide input regarding the ownership of these materials and assist in getting as many items as possible returned to the appropriate owners.  In the event that the proper disposition of contraband cannot be agreed upon or if ownership cannot be determined after this consultation process with Petitioners' counsel, the Privilege Team, without disclosing potentially confidential or privileged information, will consult with the Department of Defense Office of General Counsel and the Department of Justice before taking further action regarding disposition of the contraband or unidentified materials.

The Privilege Team will secure and maintain any documents requiring translation prior to a determination of their ownership.  The Privilege Team will arrange for appropriate translation of such documents, using translation resources otherwise available in the Privilege Team's

---

[10] If, in its inspection of materials, the Privilege Team observes any item that reasonably could be expected to result in immediate and substantial harm to the national security or relates to imminent acts of violence, the Privilege Team will report the content of that item to the JTF-GTMO Commander without seeking input from Petitioners' counsel. *See* Protective Order ¶¶ II.G.22-23.

execution of its duties under the Protective Order, and then review the documents, in the manner described above, in an effort to identify their ownership.

In light of the additional role for the Privilege Team in the context discussed above, and in the interest of transparency, Respondents hereby provide the foregoing Notice. The Privilege Team's review of these materials will proceed in the manner described above on or after August 26, 2013.[11]

Dated:  August 8, 2013

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOSEPH H. HUNT
Branch Director

TERRY M. HENRY
JAMES J. GILLIGAN
Assistant Branch Directors

/s/ *Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
DANIEL M. BARISH (D.C. Bar No. 448263)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Tel:  (202) 616-5084
Fax:  (202) 616-8470
Andrew.Warden@usdoj.gov

Attorneys for Respondents

---

[11]  In order to assess the volume of the materials for review, a member of the Privilege Team briefly looked inside one of the bags and at the outside of some of the clear plastic bins, but did not review or read any documents.  The Privilege Team currently has two members stationed at Guantanamo Bay who are prepared to begin the review immediately.  The Privilege Team will dispatch additional personnel, if needed, to Guantanamo Bay in order to complete the review described above as soon as practicable.  The Privilege Team's processing of legal mail and classification review requests will not be interrupted.

8