# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DJAMEL AMEZIANE (ISN 310),** | |
| **Petitioner,** | |
| **v.** | **Civil Action No. 05-CV-0392 (ESH)** |
| **BARACK H. OBAMA,** *et al.*, | |
| **Respondents.** | |

## SUPPLEMENTAL STATUS REPORT ADDRESSING THE PRIVILEGE TEAM'S REVIEW OF MATERIALS RECOVERED FROM JTF-GTMO CAMP 6

On September 12, 2013, in accordance with the Court's August 14, 2013 Order (ECF No. 310), Respondents filed a status report informing the Court of Respondents' progress in reviewing and returning materials recovered from Joint Task Force-Guantanamo ("JTF-GTMO") Camp 6 to the appropriate Guantanamo Bay detainees to whom the materials belong. *See* Status Report (ECF No. 320). Since the filing of that report, the Privilege Team has continued to review and return additional materials to the appropriate detainees. In light of this additional progress, Respondents hereby submit this supplemental status report to update the Court on the current status of the Privilege Team's review.

As explained in the Status Report filed on September 12, 2013, the Privilege Team completed its initial review of the materials recovered from Camp 6 and returned a significant volume of materials to the appropriate detainees. *See* Status Report (ECF No. 320) at 2. In addition, the Privilege Team identified several categories of unidentified non-privileged materials (*e.g.*, books, magazines, non-contraband physical items, blank papers) that

Respondents informed the Court would be returned to JTF-GTMO no sooner than September 30, 2013. *See id*. at 3-4. Subsequent to the filing of the September 12 status report, the Privilege Team conducted a second review of these unidentified non-privileged materials to ensure that the materials did not contain any detainee or attorney-identifying information that was not discovered during the initial review. Upon completion of the second review, the Privilege Team identified approximately 150 additional pages of materials belonging to 21 detainees.[1] The Privilege Team appropriately packaged and sealed these materials and provided them to JTF-GTMO for delivery to the appropriate detainees. JTF-GTMO completed delivery of the materials to the 21 detainees on October 3, 2013. The remaining unidentified non-privileged materials will be provided to JTF-GTMO for appropriate disposition, as reported in the September 12 status report.

The September 12 status report also informed the Court that the Privilege Team set aside several thousand pages of handwritten materials, media articles, and other printed materials that could not be identified as belonging to a specific detainee or attorney absent further review. *See* Status Report at 2-3. After the filing of the September 12 status report, the Privilege Team conducted a second review of this unidentified material in an effort to return as much of it as possible to the appropriate detainees. This second review is now complete and the Privilege Team has returned approximately 700 pages of additional material to 53 different detainees.[2] Petitioner Ameziane (ISN 310) was not among the detainees who received materials during the second phase of the Privilege Team's review. As noted in the September 12, 2013 status report,

---

[1] The Privilege Team did not identify any materials for Petitioner Ameziane.

[2] The Privilege Team also identified materials belonging to former Guantanamo Bay detainees and the Privilege Team will provide these materials to JTF-GTMO for appropriate disposition.

2

Petitioner Ameziane received approximately 4200 pages of materials on or before September 10, 2013.

Additionally, the Privilege Team has conducted a more detailed inventory of the remaining unidentified materials that could not be associated as belonging to a specific detainee or attorney.[3]   The Privilege Team has divided the remaining unidentified materials into 10 categories, as described in more detail below.

1.  JTF-GTMO stamped materials without notes:  These documents are marked with a stamp from JTF-GTMO indicating that the documents were reviewed and approved by JTF-GTMO for delivery to the detainee population, which would mean the materials were not privileged attorney-client communications.  There are no handwritten notes or markings on the documents.  Additionally, there are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  6,000 pages.

_____

[3] The September 12, 2013 status report reported that the Privilege Team had identified, during its initial review, photographs provided through the International Committee of the Red Cross ("ICRC") that could not be associated with a particular detainee. *See* Status Report at 3-4 n.2 (ECF No. 320).  The status report explained that the ICRC provided two types of photos to the detainees:  photographs from the detainees' families and nature photographs *See id*.  The status report proposed that any photographs that could not be identified or associated with a detainee would be returned to JTF-GTMO. *See id*.  After Respondents filed the status report, counsel for Petitioner Ameziane raised concerns with Respondents' counsel regarding the Privilege Team's potential return of any unidentified family photographs to JTF-GTMO.  Based on these concerns, the Privilege Team conducted a second review of all ICRC photographs and confirmed that it had previously returned all family photographs to the appropriate detainees and that that none of the remaining photos were of family members.  The only ICRC photographs that have not been returned to the detainee population are the generic nature photographs consisting of landscapes, seascapes, and cityscapes, etc., that are not marked with an identifier associating the photo to a specific detainee.  The Privilege Team will return these unidentified nature photos to JTF-GTMO for appropriate disposition. *See id*.

2.  JTF-GTMO stamped materials with notes:  These documents are marked with a stamp from JTF-GTMO indicating that the documents were reviewed and approved by JTF-GTMO for delivery to the detainee population, which would mean the materials were not privileged attorney-client communications.  The documents also contain notes written by unknown persons.  There are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  200 pages.

3. Newspaper and internet articles in Arabic with notes:  These documents consist of newspaper and internet articles written in Arabic.  The documents contain notes written by unknown persons (*e.g.*, English words written in the margins that appear to be translations).  There are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  250 pages.

4. Newspaper and internet articles in Arabic without notes:  These documents consist of newspaper and internet articles written in Arabic.  There are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  2,000 pages.

5. Newspaper and internet articles in English with notes:  These documents consist of newspaper and internet articles written in English.  The documents contain notes written by unknown persons.  There are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  200 pages.

6. Newspaper and internet articles in English without notes:  These documents consist of newspaper and internet articles written in English.  There are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  2,000 pages.

7. Miscellaneous copied and printed materials with notes:  These documents consist of printed and copied materials other than newspaper and internet media articles.  The documents consist of, among other things, printed instructional manuals from detainee education classes, prayer time schedules, and health-related information pamphlets distributed by the JTF-GTMO medical staff.  The documents contain notes written by unknown persons.  There are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  500 pages

8. Miscellaneous copied and printed materials without notes:  These documents consist of printed and copied materials other than newspaper and internet media articles.  The documents consist of, among other things, printed instructional manuals from detainee education classes, prayer time schedules, and health-related information pamphlets distributed by the JTF-GTMO medical staff.   There are no attorney-client markings on the documents and no indicia on the face of the documents that they were part of an attorney-client communication.  Approximate volume:  2,000 pages.

9. Materials containing attorney-client markings: These documents (including otherwise blank paper) contain attorney-client markings, such as "Privileged" or "Attorney-Client Material," or are marked with legal mail stamps that state "Legal Mail Approved by the DoD Privilege Team."  Although these materials bear attorney-

5

client markings and appear to have originated with attorneys for the detainees, the Privilege Team has been unable to associate the documents with a particular detainee or an attorney. Approximate volume: 600 pages.

10. Handwritten documents and items: This category of materials consists of handwritten documents and scraps of paper that the Privilege Team has been unable to associate with a particular detainee or an attorney. The majority of this material is written in a language other than English. The Privilege Team has not been able to discern any markings on the documents in English that would indicate an attorney-client communication. Approximate volume: 20,000 pages or items (*e.g.*, scraps of paper).

*\*\*\**

The first category of materials – documents bearing JTF-GTMO stamps without any handwritten notes – contain no markings that would identify the owner of the item, do not contain any indicia of attorney-client communications, and do not have any handwriting indicating they have been altered by a detainee or attorney. Further, the materials bear JTF-GTMO stamps, which means the materials either originated with, or were previously reviewed by, JTF-GTMO. Accordingly, the Privilege Team will return this first category of materials to JTF-GTMO for appropriate disposition no sooner than November 18, 2013.

The Privilege Team will transport the remaining nine categories of unidentified materials to the secure facility in Crystal City, Virginia, and make the materials available to petitioners' counsel in the Guantanamo Bay habeas cases for their inspection and review. Because of the possibility that some of these materials may have originated with an attorney or contain writings that could be considered attorney-client communications, Respondents have determined that the best course of action is to provide the unidentified materials to petitioners' counsel for review.

6

In the event petitioners' counsel identify any materials that belong to them or a detainee-client, petitioners' counsel may claim the items or, if the items belong to a detainee-client, deliver the items to the appropriate detainee-client in accordance with the terms of Protective Order entered in the Guantanamo Bay habeas cases. *See* Protective Order And Procedures For Counsel Access To Detainees At The United States Naval Base, Guantanamo Bay, Cuba, 577 F. Supp. 2d 143 (D.D.C. 2008).

Contemporaneous with petitioners' counsel's review of the unidentified material, a linguist on the Privilege Team will also review the materials that contain writing or printed material in a language other than English in an attempt to associate the documents with an appropriate detainee. The Privilege Team's linguist has been working with the Privilege Team for over seven years conducting classification reviews of non-English detainee mail and has gained familiarity with the handwriting of many of the detainees. Thus, he may be able to identify the ownership of some of the remaining documents. Respondents have concluded that contemporaneous review both by petitioners' counsel and the Privilege Team linguist is the most efficient way to further reduce the number of unidentified materials recovered from Camp 6.[4]

---

[4] In the notice Respondents filed with the Court on August 8, 2013 in all Guantanamo Bay habeas cases describing Respondents' proposed plan for review and disposition of the materials recovered from Camp 6, *see* ECF No. 304, Respondents proposed that the Privilege Team would prepare a log describing any items that the Privilege Team could not identify and provide the log to Petitioners' counsel at the secure facility for their review. This proposal was presented to the Court prior to the Privilege Team's review and without the benefit of knowing either the volume or types of materials that would be unidentified. Based on the volume and types of materials that currently remain unidentified, Respondents no longer believe preparing a log of the unidentified materials would materially advance the effort to identify the owner of the materials. Instead, Respondents will send the unidentified materials to the secure facility and provide them to petitioners' counsel for inspection and review. Respondents believe that petitioners' counsel's review of the actual materials, rather than a log describing the materials, will be more efficient and lead to a greater number of items being identified as belonging to detainees or their attorneys. As described in the September 12, 2013 Status Report, Respondents will also prepare a log describing the items of contraband identified by the Privilege Team during its review and

Dated:  November 5, 2013                    Respectfully submitted,


STUART F. DELERY
Assistant Attorney General

JOSEPH H. HUNT
Branch Director

TERRY M. HENRY
Assistant Branch Directors

/s/ *Andrew I. Warden*
ANDREW I. WARDEN (IN Bar No. 23840-49)
DANIEL M. BARISH (D.C. Bar No. 448263)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Tel:  (202) 616-5084
Fax:  (202) 616-8470
Andrew.Warden@usdoj.gov

Attorneys for Respondents

---

send that log to the security facility for petitioners' counsel's review.  *See* Status Report at 4-5
(ECF No. 320).

8