IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABU WA'EL (JIHAD) DHIAB (ISN 722), <br><br> *Petitioner*, <br><br> v. <br><br> BARACK H. OBAMA, *et al.*, <br><br> *Respondents*. | Civil Action No. 05-CV-1457 (GK) |

**RESPONDENTS' PRELIMINARY OPPOSITION TO PETITIONER'S EMERGENCY
MOTION TO COMPEL PRESERVATION OF EVIDENCE AND DISCOVERY**

Respondents provide this preliminary opposition to Petitioner Dhiab's emergency motion

for preservation of evidence and to compel discovery of medical records and video recordings of

forced cell extractions (FCE).  *See* ECF No. 217.  In accordance with the Court's May 14, 2014

Minute Order, which required a response to Petitioner's motion within two days, Respondents

submit this preliminary response on an expedited basis without prejudice to filing a more

detailed response at a later date.  For the reasons explained below, the Court should postpone the

May 21, 2014 hearing in this case pending resolution of Petitioner's discovery motion, the

completion of the evidentiary record, and submission of supplemental briefs by the parties.  In

the event the Court nonetheless proceeds with consideration of Petitioner's discovery motion at

this time, the motion should be denied.

**1.      The Court Should Postpone The Hearing In This Case Pending Resolution of
         Petitioner's Discovery Requests**

As an initial matter, Respondents object to the procedurally inappropriate and haphazard

manner by which Petitioner has presented his discovery motion to the Court.  Approximately one

month ago, on April 18, 2014, Petitioner filed a motion for preliminary injunction seeking to

enjoin Respondents from implementing various alleged practices related to the administration of enteral feeding of Petitioner. *See* ECF No. 203. At the time of this filing, Petitioner did not file a corresponding motion for discovery of the materials he currently seeks nor did Petitioner suggest that he would seek discovery at a later date. Thereafter, Respondents filed an opposition to Petitioner's motion, *see* ECF No. 214, Petitioner filed a reply in support of his motion, *see* ECF No. 215, and the Court scheduled a hearing for May 21, 2014, to address Petitioner's motion. *See* Minute Order (May 2, 2014).

Petitioner has now disrupted the orderly process for resolution of his motion by seeking last-minute discovery after completion of briefing and demanding an unreasonable production schedule for such discovery. *See* Pet'r's Mot. for Disc. at 5 (seeking production by Sunday, May 18, 2014). The well-established procedure for resolving disputes in civil litigation is to conclude discovery in the first instance and then proceed to consideration of the merits once the evidentiary record is complete. *Cf. Dinkel v. Medstar Health, Inc.*, 286 F.R.D. 28, 33 (D.D.C. 2012) (Kollar-Kotelly, J.) (denying motion for summary judgment without prejudice, holding that "pre-discovery motions for summary judgment are disfavored in this Circuit. . . . Discovery allows parties to fully develop and refine their theories of the case and to marshal evidence in support of those theories."). The Case Management Order entered in this habeas case adopts this same approach and directs the parties to submit motions for judgment only "after completion of discovery." *See* Case Management Order #1, ¶ III.A.1 (ECF No. 78). Further, this Court's local rules governing motions for preliminary injunctions contemplate that such motions will be decided upon a complete factual record. *See* Local Civil Rule 65.1(c) (requiring that a motion for preliminary injunction "shall be supported by all affidavits on which the plaintiff intends to rely" and allowing submission of supplemental evidence "only with permission of the court").

Petitioner easily could have submitted his discovery requests weeks ago and his discovery motion does not contend that the information he seeks is newly discovered.   The discovery issues now before the Court could have been litigated and potentially resolved in advance of the upcoming hearing, with sufficient time for the parties to make use of the discovery in their briefs and during the upcoming hearing.  Instead, Petitioner chose to file a purported "emergency" motion only days before the hearing that demands production on an unreasonable schedule.  The Court should not reward such inappropriate litigation tactics.

In any event, Petitioner's motion makes clear that he intends to supplement the current record in this case with Petitioner's medical records as well as video recordings of FCEs. Petitioner seeks a substantial expansion of the evidentiary record in the case and has requested nearly one year's worth of medical records and FCE video recordings.  Given Petitioner's desire to expand the record in significant fashion, the orderly and most efficient way to proceed in this case is to postpone the hearing scheduled for May 21, 2014, until the discovery issues are resolved and the record is complete.  Rather than conducting a hearing in this case based on an incomplete record, the Court should resolve Petitioner's motion for discovery in the normal course and, in the event any discovery is granted, Respondents should be provided with an appropriate amount of time to produce the discovery to Petitioner.  Thereafter, the parties should be permitted the opportunity to submit supplemental briefs discussing any newly-produced evidence.  Once the record and briefing in the case is complete, the Court should then hold a hearing to address the motion.

Proceeding with a hearing on Petitioner's motion for preliminary injunction at this time, when the parties will doubtless submit further evidence and briefing to the Court in the event discovery is granted, is an inefficient use of party and judicial resources that will likely delay

resolution of the issues presented in Petitioner's preliminary injunction motion.  Respondents do

not want to delay resolution of this matter and are prepared to dispute the allegations in

Petitioner's preliminary injunction motion by showing that Joint Task Force-Guantanamo

provides safe, humane and appropriate medical care to Petitioner.  However, because Petitioner

now believes discovery is necessary for resolution of the issues raised in his motion, the Court

should follow the well-established procedure of resolving the discovery issues in the first

instance and then deciding the merits of Petitioner's motion once the record is complete.

**2.**      **Petitioner's Motion For Discovery Should Be Denied**

In the event the Court proceeds to decide the merits of Petitioner's motion for discovery

at this time, the motion should be denied.

The Case Management Order (CMO) entered in this case provides the following standard

for resolution of discovery requests:

> Petitioner may, for good cause, obtain limited discovery beyond that described in
> the preceding paragraph. *Cf. Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A
> habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to
> discovery as a matter of ordinary course."). Such discovery requests shall be
> presented by written motion and must: (1) be narrowly tailored, not open-ended;
> (2) specify the discovery sought; (3) explain why the request, if granted, is likely
> to produce evidence that demonstrates that Petitioner's detention is unlawful, see
> *Harris*, 394 U.S. at 300 ("[W]here specific allegations before the court show
> reason to believe that the petitioner may, if the facts are fully developed, be able
> to demonstrate that he is confined illegally and is therefore entitled to relief, it is
> the duty of the court to provide the necessary facilities and procedures for an
> adequate inquiry."); and (4) explain why the requested discovery will enable
> Petitioner to rebut the factual basis for his detention without unfairly disrupting or
> unduly burdening the Government. *See Hamdi*, 542 U.S. at 533 (holding that "a
> citizen-detainee seeking to challenge his classification as an enemy combatant
> must receive . . . a fair opportunity to rebut the Government's factual assertions
> before a neutral decisionmaker"); *id*. at 534 ("[E]nemy-combatant proceedings
> may be tailored to alleviate their uncommon potential to burden the Executive at a
> time of ongoing military conflict.").

*See* CMO § I.E.2 (ECF No. 78).  The CMO was first entered by the Court in November 2008 and

contemplated discovery motions related only to the factual basis of detention, which Petitioner

Dhiab has never challenged.  Petitioner nonetheless brings his discovery motion under CMO §
I.E.2.  Applying the § I.E.2 standard, Petitioner cannot meet that standard for the two discovery
requests he presents here.[1]

### A.      Production of Medical Records

As explained in Respondents' opposition to Petitioner's motion for preliminary
injunction, Petitioner was subject to enteral feeding between March 2013 and February 2014.
On February 19, 2014, Petitioner began eating regular food and was removed from the list of
detainees approved for enteral feeding.  Thereafter, on April 23, 2014, Petitioner resumed
skipping meals.  Respondents' counsel was informed today that, on May 13, 2014, Petitioner was
placed back on the list of detainees approved for enteral feeding, but he has not been enterally
fed as of today (May 15, 2014).  In light of that recent development as well as Respondents'
reliance on medical information about Petitioner's prior enteral feeding in the opposition to
Petitioner's motion for preliminary injunction, Respondents have agreed to provide Petitioner's
counsel with Petitioner's medical records from January 1, 2014 through May 13, 2014.
Respondents intend to provide the records to Petitioner's counsel in advance of the hearing on
May 21, 2014.[2]  No further production should be required.

Petitioner nonetheless requests that Respondents produce Petitioner's medical records for
the period April 9, 2013 to December 31, 2013.  *See* Pet'r's Mot. for Disc. at 2.  Although

---

[1] Given the Supreme Court's directive in *Boumediene v. Bush*, 533 U.S. 723, 795 (2008), that
"accommodations can be made to reduce the burden habeas corpus proceedings will place on the military," the
discovery standard for conditions of confinement claims should be no more liberal, or burdensome on the
Government, than the CMO's discovery standard.  *See also Hamdi v. Rumsfeld*, 542 U.S. 507, 534 (2004) ("enemy-
combatant proceedings may be tailored to alleviate their uncommon potential to burden the Executive at a time of
ongoing military conflict"); *cf. Al-Bihani v. Obama*, 590 F.3d 866, 877-78 (D.C. Cir. 2010) (warning against habeas
procedures that could have "systemic effects on the military's entire approach to war"), *reh'g en banc denied*, 619
F.3d 1 (D.C. Cir. 2010).  *Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014), did not, and could not, overrule the
Supreme Court's concerns about the burdens that habeas litigation can impose upon the military.

[2] Respondents do not concede that these records are material to resolution of Petitioner's motion.

Petitioner was subject to enteral feeding between March 2013 and February 2014, the medical records during that time period are not material to his current motion for preliminary injunction, which seeks prospective injunctive relief to stop enteral feeding going forward.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1982) ("past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy").  Framed in terms of the CMO's factors, Petitioner cannot carry his burden of establishing that medical records of prior enteral feeding will demonstrate the unlawfulness of any future enteral feeding.

Respondents have explained in detail the process by which Guantanamo detainees are enterally fed and have represented that those procedures will apply to Petitioner.  *See* Resp'ts' Opp'n to Pet'r's Mot. For Prelim. Inj. (ECF No. 214).  The motion for preliminary injunction should be evaluated against those facts, not on the basis of medical records documenting prior enteral feedings that occurred months ago.

Petitioner's only attempt to meet the CMO discovery standard with respect to his demand for the remaining medical records is a short, unsupported statement that the medical records "are likely to support his allegation of abuse."  *See* Pet'r's Mot. for Disc. at 3.  Petitioner, however, has not submitted a declaration identifying any specific instances of abuse during *his* prior enteral feedings that would justify production of medical records under the CMO's standards.  The only evidence Petitioner has presented specific to his prior enteral feeding is a vague declaration from his attorney briefly addressing Petitioner's "circumstances when last force-fed."  *See* Declaration of Cori Crider ¶¶ 12-15 (ECF No. 208).  But that declaration merely asserts facts that are not in dispute, such as the fact that Petitioner was enterally fed twice per day, that he was brought to enteral feedings by FCE, and that he never vomited or defecated during the enteral feeding process.  *Id.*  Petitioner's counsel's declaration provides only a conclusory statement that

the speed of prior feedings was "very rapid," but that allegation was rebutted and refuted directly in Respondents' opposition. *See* Resp'ts' Opp'n to Pet'r's Mot. For Prelim. Inj., Ex. 9. Petitioner's request for production of medical records is thus the type of "purely speculative" discovery that should be denied. *See Al-Adahi v. Obama*, 616 F. Supp. 2d 3, 4 (D.D.C. 2009).

Petitioner also incorrectly contends that production of prior medical records is required under this Court's prior decision in *Al-Adahi v. Obama*, 596 F. Supp. 2d 111 (D.D.C. 2009). *See* Pet'r's Mot. at 3. Although unclear, Petitioner appears to be relying on an order entered in 2005 in *Al-Adahi* and several other Guantanamo Bay habeas cases, but not this case, requiring Respondents to provide notice of enteral feeding within 24 hours of its commencement and to produce medical records one week prior to the commencement of enteral feeding and then weekly thereafter while enteral feeding remains ongoing. *See Al-Joudi v. Obama*, 406 F. Supp. 2d 13, 23 (D.D.C. 2005). But the Court's decision in *Al-Joudi* limited production of past medical records to one week prior to the commencement of the current enteral feeding; here, Respondents have agreed to provide several months of medical records leading up to Petitioner's latest designation as being approved for enteral feeding. The Court in *Al-Joudi*, however, did not require Respondents to produce the type of overbroad discovery of prior medical records that Petitioner seeks.

For these reasons, Petitioner's request for production of medical records from April 9, 2013, to December 31, 2013, should be denied. In the event, however, that the Court requires production of these records, the Court should provide Respondents with an appropriate amount of time to collect the records and produce them to Petitioner's counsel. Petitioner's proposed production deadline of Sunday, May 18, 2004, is unreasonable, particularly given that medical personnel at Guantanamo, who are also engaged in providing care to detainees, will be required

to collect and process the records in the first instance.[3]  Respondents' respectfully request that

any production of medical records be due no sooner than 21 days following an order granting

disclosure.

### B.    Production of FCE Videos

The Court should also deny Petitioner's request for production of "all videotapes made of

Mr. Dhiab's Forcible Cell Extractions and/or enteral feedings during the period April 9, 2013 to

February 19, 2014."  *See* Pet'r's Mot. at 2.

At the outset Petitioner mistakenly contends that discovery of the FCE videos are

required in accordance with this Court's order in *Al-Adahi v. Obama*, 2009 WL 1743756 (D.D.C.

June 18, 2009).  In *Al-Adahi*, the Court required production of a small number of FCE videos –

six total – given the fact that FCEs were conducted near the time when the petitioner in that case

gave interrogation statements that Respondents relied upon to support his detention  *See id.*; *see

also* Resp'ts' Opp'n to Pet'r's Mot. to Compel, Civil Action No. 05-0280 (GK) (ECF No. 416).

In those circumstances, the Court concluded that discovery was appropriate under section I.D.1

of the CMO, which requires production of evidence that would materially undermine the factual

basis for detention.  Here, Section I.D.1 is inapplicable because Petitioner is not challenging the

factual basis for his detention.  Instead, he must carry the burden of establishing that he meets the

standard for good cause discovery under section I.E.2 of the CMO.   Petitioner cannot meet this

standard for several reasons.

First, Petitioner has not carried his burden of explaining how production of these videos

will demonstrate the necessity of a preliminary injunction prohibiting future enteral feedings of

---

[3] All medical records must be reviewed prior to production and, consistent with prior practice in the
Guantanamo cases, appropriately redacted to ensure protection of information related to force protection as well as
the safety and privacy of medical providers at Guantanamo.

Petitioner.   As with his request for medical records, Petitioner has not identified any specific FCE that he contends is unlawful.  Petitioner has not even provided approximate dates or descriptions of particular FCEs that he contends were conducted in an abusive manner.  His motion is completely devoid of any details regarding specific instances of mistreatment.  Rather, he has only raised vague and speculative allegations of FCE abuse based almost entirely on statements of other detainees that provide no information about Petitioner whatsoever.  *See* Petr's Mot. For Prelim. Inj at 5-6 (citing declarations and statements of other detainees to support FCE allegations without any reference to Petitioner).  Notably, Petitioner's counsel's declaration raises only one allegation specific to Petitioner Dhiab in connection with FCEs, asserting, without detail, that JTF-GTMO personnel touched Petitioner's stomach during FCEs, which caused pain.  *See* Declaration of Cori Crider ¶ 14 (ECF No. 208).  But that allegation was squarely rebutted and denied in Respondents' opposition brief.  *See* Resp'ts' Opp'n to Pet'r's Mot. For Prelim. Inj., Ex. 9-10.  The CMO places the burden on Petitioner to come forward with "specific allegations" to support discovery, and Petitioner has not come close to meeting that requirement with respect to any FCE involving him.  *See* CMO § I.E.2 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

Second, the discovery request for FCE videos is not narrowly tailored.  Petitioner does not limit his request for the last year's worth of FCE videos in any way.  He does not limit his request to FCEs related to enteral feedings or to specific feedings or otherwise.  Rather, he seeks *all* FCE videos, for whatever purpose, even if such FCEs have no connection to enteral feeding.  *See* Pet'r's Mot. for Disc. at  1.

Third, production of the requested FCE videos, particularly on the unreasonable schedule that Petitioner proposes, would unfairly disrupt and unduly burden Respondents, including most

importantly the military personnel at Guantanamo Bay.  At this time Respondents are in the

process of determining the scope and volume of video recordings that would be subject to

Petitioner's request, but Respondents can safely predict that the volume will be substantial

because "[a]ll FCEs are videotaped."  *See* Review of Department Compliance with President's

Executive Order on Detainee Conditions of Confinement at 42, http://goo.gl/wmPjI1.  Based on

a preliminary review of FCE records, Respondents estimate that there are approximately 140 to

150 FCE videos of Petitioner between April 9, 2013 and February 19, 2014, either in connection

with enteral feedings of Petitioner or other situations in which Petitioner refused to leave his cell

or other areas in compliance with the requests of JTF-GTMO personnel.  Based on this

preliminary review, it appears that the vast majority of these videos are of FCEs in connection

with enteral feeding or otherwise arguably related to enteral feeding (such as FCEs to obtain

Petitioner's weight).  *See generally* Resp'ts' Opp'n to Pet'r's Mot. For Prelim. Inj., Ex. 5

(describing FCE process).  Each FCE video typically lasts approximately 15 minutes on average.

Therefore, if Petitioner's motion is granted, Respondents would be required to produce roughly

37.5 hours of video recordings.[4]

Furthermore, as noted in Petitioner's motion, the video recordings are classified at the

"SECRET" level, thus prior to any production, the videos would need to be reviewed in their

entirety for national security information as well as other sensitive internal security and force

protection information that would not be appropriate for disclosure.  This review, along with the

potential time required to perform "redactions" (*e.g.*, blurring images of faces or security

---

[4] During the *Al-Adahi* merits hearing, the parties played 6 FCEs videos for the Court over the course of approximately two hours.  The Court interjected with questions and the parties provided narration and commentary during the videos.  Assuming the same approach is taken here, a multi-day hearing may be required in order to present all of the video evidence to the Court.

apparatus, or muting of audio) to the videos, will require significant effort and time.[5]  At present, JTF-GTMO does not have the capacity to convert the videos, which are in a video cassette format, into digital format.  In their current format, copying a 15 minute video would take an average of 15 minutes just to transfer the content to another cassette.  Therefore, to copy all of the videos in the requested date range would take a full business week or more of uninterrupted, dedicated time.  Additionally, there is the issue of physically moving the copies of the videos from Guantanamo Bay to Washington, D.C., for production to Petitioner.  Because all but two of the videos are in video cassette format located at Guantanamo Bay, the videos would need to be copied and then couriered, under appropriate security protocols given their classification, to Washington, D.C., via military aircraft.  The format, volume and length of the videos, as well as their classification, likely renders transmission by classified e-mail impracticable, if not impossible, especially given the limited bandwidth for internet and e-mail transmissions at Guantanamo.

        Even aside from the burdens associated with Petitioner's request for FCE videos in this particular case, the assessment of the undue burden on Respondents should also be considered in light of the likely impact of granting requests such as Petitioner's across other Guantanamo cases.  Indeed, Petitioner's counsel have filed two other motions for preliminary injunctions related to enteral feeding on behalf of two other Guantanamo detainees, *see Rabbani v. Obama*, Civ. Action No. 05-1607 (RCL); *Hassan v. Obama*, Civ. Action No. 04-1194 (TFH), and has requested production of FCE videos in one of those cases.  Should the Court grant Petitioner's request in this case, where the detainee seeks wide-ranging and burdensome discovery supported

---

[5] JTF-GTMO does not have the technological capacity to make redactions to the video cassettes to protect sensitive information that may implicate national and operational security interests.  Thus, redacting the videos may require further time and coordination.

merely by vague and generalized allegations, the influence of such a ruling in other challenges to conditions of confinement—including the pending challenges brought by Petitioner's counsel, as well as future challenges brought by those counsel or others in other detainee cases—could result in extraordinary cumulative burdens on Respondents.   Such a result would be inconsistent with the Supreme Court's guidance that, in these cases, "accommodations . . . be made to reduce the burden habeas corpus proceedings will place on the military." *See Boumediene*, 533 U.S. at 795; *supra* note 1.

   For these reasons, Petitioner has not carried his burden under Section I.E.2 of the CMO to require production of the FCE videos.   In the event, however, that the Court requires production of these videos, it should not set a specific production deadline given the burdens and difficulties associated with production of this unique set of materials.   Instead, the Court should require Respondents to provide a status report within 14 days of any production order setting forth a proposed schedule for production.   This approach would enable Respondents to provide the Court and Petitioner with a more accurate assessment of any production that would be required in this case.

   **3.   <u>Petitioner's Motion For A Preservation Order Should Be Denied</u>**

   Finally, Petitioner's motion for a preservation order is frivolous and should be denied summarily.   The Department of Defense is aware of its preservation obligations and will preserve any video recordings falling within the scope Petitioner's discovery request.

   Petitioner's motion summarizes an e-mail exchange between counsel for Petitioner and Respondents about this issue, but Petitioner did not inform the Court of the representation by Respondents' counsel that the Department of Defense will preserve any video recordings falling within the scope Petitioner's discovery request.   *See* Exhibit 1.   Petitioner's counsel unnecessarily brought this issue before the Court because of Petitioner's counsel's self-imposed

"immediate" demand for assurances.  *See* Pet'r's Mot. for Disc. at 5.  Petitioner's motion

otherwise provides no factual or legal basis to seek a preservation order.[6]  As reflected in the e-

mail exchange, Respondents' counsel responded promptly – within 90 minutes – to Petitioner's

counsel's questions about preservation and provided the necessary assurances that a preservation

order was not necessary.  *See id*.  Consequently, Petitioner's motion for preservation order

should be denied.

## CONCLUSION

For the reasons explained above, the Court should postpone the May 21, 2014 hearing in

this case pending resolution of Petitioner's discovery requests, the completion of the evidentiary

record in this case, and submission of supplemental briefs by the parties.  In the event the Court

nonetheless proceeds with consideration of Petitioner's discovery motion at this time, the motion

should be denied.[7]  Proposed orders are attached.

---

[6] A preliminary injunction standard should be used for evaluating Petitioner's request for a preservation order, and Petitioner has made no showing that he is entitled to such relief.  *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (requiring, *inter alia*, that movant demonstrate likelihood of irreparable harm in the absence of an injunction).  Even if the Court employs the more relaxed standard reflected in *Pueblo of Laguna v. United States,* 60 Fed. Cl. 133, 137-38 (Fed. Cl. 2004), Petitioner still has not made the requisite showing for a preservation order.  *Id.* (articulating two-prong test whether the requested preservation order is necessary and not unduly burdensome and requiring that movant "must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed").  Here, Petitioner makes no showing whatsoever for the need for a preservation order aside from his own subjective fear that such an order is needed.

[7] Although never raised in a proper motion for discovery as required by the CMO, Respondents note that Petitioner's reply memorandum in support of his motion for preliminary injunction seeks disclosure of JTF-GTMO's current protocols and Standard Operating Procedures (SOP) governing enteral feeding and use of the restraint chair.  *See* Pet'r's Reply. Mem. at 11-14.  As explained in Respondents' opposition brief, Petitioner has never properly raised this request in an appropriate motion for discovery and it should be denied on that basis alone.  *See* Resp'ts' Opp'n to Pet'r's Mot. For Prelim. Inj. at 32 n.21.  However, in the event the Court construes the argument in Petitioner's reply memorandum to be an appropriate request for discovery, Petitioner's request should be denied.  The declarations and opposition memorandum that Respondents submitted in opposing Petitioner's motion for preliminary injunction explain in detail the process by which enteral feeding and the restraint chair are conducted both generally and as applied to Petitioner.  Consequently, there is no reason to produce additional materials in this case.  Notably, in upholding use of the restraint chair in *Al-Adahi*, this Court never required production of JTF-GTMO's SOPs and relied exclusively on the declarations of JTF-GTMO officials who explained the restraint chair process in detail.  *See Al Adahi v. Obama*, 596 F. Supp. 2d 111, 115-116 (D.D.C. 2009) (citing declarations).  Petitioner has not carried his burden to establish why a different course is needed in this case and his request should be denied.

Dated:  May 15, 2014                    Respectfully submitted,

                                        STUART F. DELERY
                                        Assistant Attorney General

                                        JOSEPH H. HUNT
                                        Director, Federal Programs Branch

                                        TERRY M. HENRY
                                        Assistant Branch Director

                                         /s/
                                        _____
                                        ANDREW I. WARDEN (IN Bar No. 23840-49)
                                        TIMOTHY B. WALTHALL
                                        PATRICK D. DAVIS
                                        Attorneys
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Avenue, N.W.
                                        Washington, DC  20530
                                        Tel: (202) 616-5084
                                        andrew.warden@usdoj.gov