**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ABU WA'EL (JIHAD) DHIAB,** | |
| *Petitioner/Plaintiff,* | **Civ. No. 05-1457 (GK)** |
| **v.** | |
| **BARACK H. OBAMA, et al.,** | |
| *Respondents/Defendants.* | |

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO SEAL
PRELIMINARY INJUNCTION HEARING**

**INTRODUCTION**

Respondents have asked the Court to take an extraordinary step that is wholly disfavored in the law:  to cloak nearly all of the upcoming preliminary injunction hearing in secrecy by barring the public from the courtroom.  This request is an affront to fundamental precepts of an open society and disregards applicable legal principles, deeply rooted in our nation's jurisprudence, that require the Court to deny Respondents' extraordinary request.

**LEGAL DISCUSSION**

**I.      Open Societies Eschew Secret Trials.**

The United States Supreme Court has proclaimed America's commitment to the ideal of an open trial, which "plays as important a role in the administration of justice today as it did for centuries before our separation from England."  *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 508 (1984).  "The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established

procedures are being followed and that deviations will become known." *Id.* Openness enhances "the appearance of fairness so essential to public confidence in the system." *Id.*

As one court has explained: "The right to a public trial contributes to just adjudication, stimulates public confidence in the judicial system, and ensures that the public is fairly apprised of the proceedings in cases of public concern." *United States v. Rosen*, 487 F. Supp. 2d 703, 715 (E.D. Va. 2007). "In short, justice must not only be done, it must be *seen* to be done." *Id.* at 715-16 (emphasis added.) Thus, "[c]losing a trial, even partially, is a highly unusual result disfavored by the law." *Id.* at 710.

## II.    A Closure of Proceedings Must Be *Narrowly Tailored*.

Respondents are wrong to assert that Petitioner will suffer no prejudice from a largely closed trial. Throughout this litigation, the Court has taken the traditional approach—holding hearings in open court to the greatest extent possible, and only closing the courtroom when confidential information is to be discussed. Already this public discussion has had a salutary effect; it has induced Respondents to abandon certain medically unsound procedures, such as the lubrication of force-feeding tubes with olive oil. Petitioner has repeatedly stated he wishes his plight to be assessed in open Court to the greatest extent possible.

Respondents say nothing of the several prior hearings in this case, in which both counsel and the Court have repeatedly sifted classified, protected, and public information and discussed them at the appropriate times. This has not proven an insuperable obstacle to open justice; it has not even been a terribly complex exercise. Only now, on the eve of a hearing at which Petitioner will finally have the opportunity to present unclassified evidence of what his day-to-day treatment is really like, do Respondents insist that the public gallery should be kept entirely empty.

As with those other hearings, it will be perfectly feasible to separate confidential from public information during this hearing. This is not a typical Guantánamo habeas hearing, with several hundred classified exhibits from numerous confidential sources. The vast majority of the evidence for Petitioner's case-in-chief is public. All of Petitioner's filed declarations are entirely public. Petitioner's expert witnesses filed public reports.

As for "protected" information, Petitioner is (by Respondents' own lights) allowed to use all of his medical records in public if he sees fit. The identities of the current and previous Senior Medical Officers are protected; their disclosure is simple to avoid. The other main category of protected information that has previously been discussed, as the Court knows, is irrelevant to next week's hearing.

Up to now there had been but one set of classified information at issue: the videotapes. But we have already had several hearings in which the videotapes have been addressed; again, their classification status was never thought a good reason to close the courtroom during presentation of all *public* evidence as well.

Courtroom proceedings sometimes may be closed to the extent necessary to protect sensitive information.  But "[c]losed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press-Enterprise*, 464 U.S. at 509.  "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is *narrowly tailored to serve that interest*." *Id.* (emphasis added).

This overarching standard—permitting closure only rarely, and only if *narrowly tailored*—applies even when national security information is implicated. *See Washington Post Co. v. Soussoudis*, 807 F.2d 383, 391-92 (4th Cir. 1986).  "History teaches us how easily the

spectre of a threat to 'national security' may be used to justify a wide variety of repressive government actions.  A blind acceptance by the courts of the government's insistence on the need for secrecy . . . would impermissibly compromise the independence of the judiciary and open the door to possible abuse."  *Id.*  Thus, the rules restricting closure of court proceedings "are fully applicable in the context of closure motions based on threats to national security."  *Id.* at 392.

Narrow tailoring means restricting closed proceedings to portions during which national security information will be disclosed.  *See United States v. Clark*, 475 F.2d 240, 243-47 (2d Cir. 1973).  It does *not* mean this Court should hold open session only for the presentation of short, anodyne opening statements, and close the courtroom for the discussion of large swathes of evidence that has long been on the public docket.  The courtroom must remain open for the presentation of evidence that does not require protection from disclosure.  *Id.* at 245-46. "Barring the public from the entire hearing" is "an error of constitutional magnitude."  *Id.* at 246.

## III.    Any Closure Here Should Only Be Partial.

Our nation's military appeals courts have provided guidance on courtroom closure where portions of a proceeding will involve national security information:

*First*, if a particular witness's testimony "does not contain references to classified material," that witness should "testify in open court."  *United States v. Grunden*, 2 M.J. 116, 123 (U.S. Ct. Mil. App. 1977).

*Second*, if a particular witness's testimony is "only partially concerned" with classified material, that witness's testimony should be *bifurcated*, with closed testimony on the classified matters and testimony "in open court on all other matters."  *Grunden*, 2 M.J. at 123.  "For even assuming a valid underlying basis for the exclusion of the public, it is error of 'constitutional

4

magnitude' to exclude the public from all of a given witness' testimony when only a portion is devoted to classified material." *Id.; accord, Denver Post Corp. v. United States*, 2005 WL 6519929 at *4 (Army Ct. Crim. App. 2005) ("The witness whose testimony is only partially concerned with this area should testify in open court on all other matters.").

*Third*, "in a few instances," a witness's testimony on classified information may be "so inextricably linked to classified matters as to make it all properly received in a closed session." *Denver Post Corp.*, 2005 WL 6519929 at *3. Likewise, if a witness's testimony "deals virtually exclusively with classified materials," the courtroom may be closed for all of that witness's testimony. *Grunden*, 2 M.J. at 124 n. 20. Even in these few instances, however, the closure is only for *that* witness's testimony. A "blanket exclusion of the public" is "error of constitutional magnitude." *Id.* at 124.

These principles dictate the following in the present case:

The testimony of Dr. Miles should be heard entirely in open court. Because Dr. Miles lacks a security clearance, he cannot testify regarding classified information, and we do not anticipate that he will testify regarding protected information.

The testimony of Dr. Crosby and Dr. Xenakis should be bifurcated into open and closed sessions: open for testimony pertaining to the written reports on their examinations of Mr. Dhiab, which have already been filed on this Court's public docket and are thus public information; and closed for the small amount of testimony they will give regarding classified or protected information. For the sake of efficiency, Petitioner's counsel propose that both Dr. Crosby and Dr. Xenakis undergo direct examination, cross-examination, and any potential further examination regarding unclassified information in open court on October 6, as set forth in the Joint Status Report (Dkt. No. 331). The courtroom may then be briefly closed to conduct

short direct, cross, and potential further examination regarding classified information. Petitioner's counsel anticipate that examination of both Drs. Crosby and Xenakis will be completed on October. Dr. Miles' brief public evidence would follow on the morning of October 7.

Likewise, the presentation of documentary evidence—the bulk of which is now public (or which, in the case of the recently-produced Standard Operating Procedures and the Supplemental Declaration of the current Senior Medical Officer, Respondents have pledged to make public prior to the hearing) and is wholly severable from protected and classified information—should be bifurcated into public submission of public evidence and closed submission of classified and protected information. Petitioner's counsel proposes that any classified evidence be introduced following the closed examinations of Drs. Crosby and Xenakis on October 6, and again if Respondents require it during presentation of their case-in-chief on October 7.

## IV.   Respondents' Arguments For Blanket Closure Are Meritless.

Respondents assert three arguments for blanket closure of the preliminary injunction hearing.  Each is meritless.

*First*, Respondents argue that the public information Petitioner wishes to present is "often inextricably intertwined" with classified and protected[1] information, creating a risk of disclosing

---

[1] Respondents overreach when they state baldly that protected information "cannot be disclosed to the public." (Resp's. Mot. At 2).  As this Court knows, that is for the Court to decide in the event a designation is challenged, not for the Government unilaterally to declare: "It is the Court, not the Government, that has discretion to seal a judicial record, which the public ordinarily has the right to inspect and copy." *In Re Guantanamo Bay Detainee Litigation,* Civ. No. 08-442 (TFH), Order, p.5 (June 1, 2009) (denying government request to designate as protected all factual returns in Guantánamo Bay habeas cases) (internal citations omitted).  As it happens, Petitioner's counsel do not dispute the designation of the SMOs' identities as protected, and Respondents do not purport to tell Petitioner he cannot discuss his own medical history in public. But Respondents' language is indicative of their overweening demand to extend secrecy even

the latter in public proceedings. Resps.' Motion at 3.  But the very case Respondents cite in support of this argument—*United States v. Poindexter*, 732 F. Supp. 165 (D.D.C. 1990)—demonstrates why the argument is meritless.  In *Poindexter*, which involved the question of public access to videotaped deposition testimony by President Reagan during the trial of John Poindexter, the court rejected bifurcation of the deposition into open and closed sessions, and instead excluded the public from the entirety of the deposition, because it was wholly unknown how President Reagan would testify and thus it was impossible to predict whether bifurcation would be adequate to protect national security:  "No one can know at this point what President Reagan's answers will be to these questions or the extent to which these answers will reveal classified, sensitive matters of state." *Poindexter*, 732 F. Supp. at 168.  Here, in contrast, this Court knows *precisely* how Petitioner's three expert witnesses will testify, because they have filed written reports in advance of the hearing.  Indeed, in the *Denver Post* case, the military appeals court observed that impediments to effective bifurcation can be obviated by requiring counsel to disclose the subjects of the anticipated testimony in advance of the hearing.  *See Denver Post,* 2005 WL 6519929 at *3.

*Second*, Respondents argue that a bifurcated hearing "is rife with the risk of slip-ups and inadvertent disclosure of protected or classified information."  Resps.' Motion at 4.  But the Second Circuit rejected this sort of argument in *Clark*, 475 F.2d at 246, observing that "the remote possibility of an unsolicited, spontaneous disclosure" could not "justify such a broad policy of exclusion. . . .  Since the witnesses were well aware of the government's desire to maintain the secrecy . . . , the risk of inadvertent disclosure was negligible."  Here, as in *Clark*, the witnesses are exquisitely aware of the need to maintain the secrecy of protected and

_____

over already public information and their tendency to seek to "usurp the Court's discretion to seal judicial records," *id.* at 19.

classified information.   Indeed, Dr. Crosby recently testified under similar conditions in open military commission proceedings for Abd al-Rahim al-Nashiri, in which it has been reported that she "chose her words carefully" because of the need to protect Top Secret records that she had reviewed.   *See* Rosenberg, "Expert testifies accused USS Cole bomber was tortured," Miami Herald (Apr. 24, 2014).

As the military appeals court in *Grunden* observed, although a bifurcated hearing "may involve complex and delicate matters for resolution by the trial judge . . . these are matters that judicial officers must and should be equipped to properly determine."   *Grunden*, 2 M.J. at 123. The parties and the Court in the present proceeding make these sorts of determinations every time they decide whether a document should be filed on the public docket or under seal.

*Third*, Respondents decry the "significant logistical burdens," "delay," and "'great cost in the continuity of questioning'" that bifurcation of witness testimony would purportedly entail. Resps.' Motion at 4-5.   In truth, however, bifurcation of this hearing can be relatively simple. There are only two witnesses—Dr. Crosby and Dr. Xenakis—for whom bifurcation is warranted, and they can testify in closed session seriatim.   This will reduce the number of courtroom closures to the bare minimum—as stated above, perhaps as little as once for closed-session testimony and once more for closed-session submission of classified and protected evidence.

Finally, we note that in each of the three cases on which Respondents rely, the courtroom closure was only *partial*, rather than a blanket closure of the entire proceeding.   *See Poindexter*, 732 F. Supp. at 166 (exclusion only from the portion of trial that consisted of President Reagan's videotaped deposition); *New York v. Microsoft Corp.*, 206 F.R.D. 19, 20 (D.D.C. 2002) (granting public access to some but not all deposition transcripts); *United States v. Marzook*, 412 F. Supp.

2d 913, 916 (N.D. Ill. 2006) (closure for only two of six or seven witnesses). None of those cases supports the blanket closure that Respondents seek here.

## CONCLUSION

For the foregoing reasons, this Court should deny Respondents' motion and hold the preliminary injunction hearing open to the public, closing the hearing only when classified or protected information is to be disclosed.

Respectfully submitted,


    /s/ Jon B. Eisenberg
**JON B. EISENBERG** (CA State Bar #88278)
1970 Broadway, Suite 1200
Oakland, CA 94612
(510) 452-2581
*jeisenberg@horvitzlevy.com*


    /s/ Cori Crider
**REPRIEVE**
Clive Stafford Smith (LA Bar #14444)
Cori Crider (NY Bar #4525721)
Alka Pradhan (D.C. Bar #1004387)
P.O. Box 72054
London EC3P 3BZ
United Kingdom
011 44 207 553 8140
*clive.stafford.smith@reprieve.org.uk*
*cori@reprieve.org.uk*
alka.pradhan@reprieve.org


    /s/ Lisa R. Jaskol
**PUBLIC COUNSEL**
Lisa R. Jaskol (CA State Bar #138769)
610 S. Ardmore Avenue
Los Angeles, CA  90005
(213) 385-2977
*ljaskol@publiccounsel.org*

_____/s/ Eric L. Lewis_____

**LEWIS BAACH PLLC**
Eric L. Lewis (D.C. Bar #394643)
Elizabeth L. Marvin (D.C. Bar #496571)
1899 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20006
(202) 833-8900
*eric.lewis@lewisbaach.com*
*elizabeth.marvin@lewisbaach.com*

Dated:  September 30, 2014          *Counsel for Petitioner/Plaintiff*