UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABU WA'EL (JIHAD) DHIAB, :
:
       Petitioner, :
:
v. : Civil Action No. 05-1457 (GK)
:
BARACK OBAMA, *et al.*, :
:
       Respondents. :

## MEMORANDUM OPINION

On October 3, 2014, this Court issued a decision to grant, with specified conditions, the Motion of Press-Intervenors to Unseal Videotape Evidence consisting of recent classified videotapes of forcible cell extraction and force feeding of Petitioner Dhiab, who had been detained for more than 12 years at the United States Naval Base in Guantanamo Bay [Dkt. No. 349]. On October 15, 2014, the Government filed a Motion to Stay that ruling, accompanied by two additional declarations in support of the Motion [Dkt. No. 356], only one of which related to harm the Government believed would result from unsealing the tapes. On November 7, 2014, the Court granted the Government's Motion to Stay until midnight December 2, 2014 [Dkt. No. 367]. On November 10, 2014, the Government filed a Notice of Appeal with the Court of Appeals [Dkt. No. 368]. On December 2, 2014, the Government filed with this Court an Emergency Motion to Extend Stay of Orders Unsealing Classified Videotapes Pending Final Resolution of Appeal [Dkt. No. 375], and filed two additional declarations in support of its Emergency Motion. Redacted copies at Dkt. No. 375. On December 3, 2014, this Court granted that Motion [Dkt. No. 378]. On December 5, 2014, the case was transferred to the Court of Appeals as Case No. 14-5299.

On May 29, 2015, the Court of Appeals, in a *per curiam* Opinion, dismissed the appeal because this Court's Orders were not final orders over which the Court of Appeals had jurisdiction. In addition, it denied the request for a *writ of mandamus*, and remanded the case back to this Court. In that Opinion, the Court of Appeals noted that the remand would give this Court "an opportunity to consider the supplemental declarations that the Government submitted in support of its motion to stay. When it ruled on the Intervenors' motion to unseal, the district court did not have an opportunity to consider those declarations which set out the harm associated with release of the videotapes in considerably more detail than the declarations the Government submitted in opposition to the initial motion." Dhiab v. Obama, 787 F.3d 563, 567 (D.C. Cir. 2015).[1] The Mandate from the Court of Appeals was issued on June 25, 2015 [Dkt. No. 385].

On July 15, 2015, the Government moved for reconsideration of the Court's October 3, 2014 Memorandum Opinion and Order [Dkt. No. 388]. Both Petitioner and Press-Intervenors filed Oppositions [Dkt. Nos. 394, 396], and the Government filed its Reply on August 17, 2015 [Dkt. No. 397].

### A.   The Government Has Failed to Meet the Standard for Granting a Motion for Reconsideration

While the Government has not clearly identified the provisions of the Federal Rules of Civil Procedure under which it is applying for reconsideration, the Court will assume that it is proceeding under Rule 54(b). See p. 19, n. 4 of Mot. to Reconsider.

---

[1] Since then, the Government has filed two more supplemental declarations. The Court has read and considered them carefully, including the classified portions, as well as the three original declarations submitted on October 15, 2014 and December 2, 2014. Redacted copies at Dkt. Nos. 406, 391.

The law is clear and well established as to what the basic requirements are that must be satisfied in order to prevail on a motion for reconsideration. They are: "(1) an intervening change in the law; (2) the discovery of new evidence <u>not previously available</u>; or (3) a clear error of law in the first order." <u>In re Guantanamo Detainee Litig.</u>, 706 F. Supp. 2d 120, 122-23 (D.D.C. 2010) (emphasis added) (internal quotation marks omitted).

"A motion for reconsideration is not an 'opportunity to reargue facts and theories upon which a court has already ruled,' nor is it 'a vehicle for presenting theories or arguments that could have been advanced earlier.'" <u>Gilmore v. Palestine Interim Self-Government Authority</u>, 8 F. Supp. 3d 1, 6 (D.D.C. 2015) (quoting <u>S.E.C. v. Bilzerian</u>, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

In addition, "the Supreme Court has cautioned that a Court should be 'loathe to do so [i.e., granting a motion for reconsideration] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.'" <u>Id.</u> at 6 (quoting <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 817 (1988)).

Knowing full well that whatever decision this Court now files will find its way to the Court of Appeals because of the significance and complexity of the issues, and that there is need to obtain final rulings on those issues as soon as possible, the Court has chosen to be as brief and succinct as possible.

1.    As to the first requirement for granting a motion for reconsideration, there has been no "intervening change in the law." Nor does the Government argue to the contrary.

2.    As to the second requirement for granting a motion for reconsideration, there has been no discovery of new evidence that was "<u>not previously available</u>." The Government has offered no

explanation whatsoever as to why it could not have submitted the post-decision declarations in time for this Court to consider them before its initial ruling.

On June 20, 2014, Press-Intervenors filed their Motion to Unseal [Dkt. No. 263]. On June 23, 2014, the Court ordered any Opposition to that Motion to be filed no later than July 1, 2014. On June 26, 2014, the Court granted an unopposed Motion for Extension of Time to the Government to file its response to the Motion to Unseal by July 18, 2014 [Dkt. No. 272], and Press-Intervenors were given up to and including August 1, 2014, in which to file their Reply. Finally, on July 18, 2014, the Government did file its Opposition to the Motion to Unseal, along with the two unredacted declarations. [Dkt. No. 288].

Thus, after obtaining an extension of time from the Court, the Government received a total of 28 days in which to file its Opposition. In those 28 days, the Government could have filed a Motion for additional time in which to file additional declarations to support its Opposition to the Motion to Unseal. Moreover, when the Government did file its additional declarations, almost three months later, on October 15, 2014, they were in support of its Motion to Stay the Court's decision to grant the Motion to Unseal, not in support of its arguments on the merits.

In short, the Government has proffered no information or justification as to why or how the new evidence it submitted after the Court ruled was "not previously available."

3. As to the third requirement for granting a motion for reconsideration, there has been no "clear error of law" for the following reasons.

a. The Government's most emphatic argument is that no court has ever before, in any Guantanamo Bay habeas proceeding, allowed public disclosure of classified national security

-4-

information, in this case, the thirty-two videos classified as SECRET depicting Mr. Dhiab being forcibly removed from his cell and forcibly fed against his will.

The simple answer to this argument is that no court has ever before, in any Guantanamo Bay proceeding, <u>refused</u> to allow public disclosure of images of any kind, depicting detainees being forcibly removed from their cells and forcibly fed against their will.[2]

As Judge Hogan pointed out in <u>In re Guantanamo Bay Detainee Litig.</u>, 624 F. Supp. 2d 27 (D.D.C. 2009), the "D.C. circuit has neither recognized nor rejected that the First Amendment affords the public a right of access to civil proceedings. The Government interprets the D.C. Circuit's silence as a denial of the right." Id. at 35. However, given that five "other circuits have opined and uniformly held that the public has a First Amendment right of access to civil proceedings [such as habeas proceedings] and records," Judge Hogan concluded, and this Court agrees, that there has been a long history in our country of public access to civil proceedings. Id. at 36[3]

      b.      The Government also argues that the Court ignored "well established precedent" regarding the Executive Branch's authority to classify national security information, and

---

[2] It is true that another District Court in this Circuit, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, declined to order release of several videotapes of a Guantanamo detainee being forcibly extracted from his cell. <u>Int'l Counsel Bureau v. U.S. Dep't of Def.</u>, 906 F. Supp. 2d 1 (D.D.C. 2012). However, FOIA provides the Government with a significantly more lenient standard for denying release of records than the First Amendment. Under FOIA, in order for the Government to withhold requested documents, "little proof or explanation is required beyond a plausible assertion that information is properly classified." Id. at 6 (quoting <u>Morley v. CIA</u>, 508 F.3d 1108, 1124 (D.C. Cir. 2007)). By contrast, under the First Amendment, public access to judicial records is appropriate unless the Government demonstrates a "substantial probability" of harm to an "overriding interest," <u>Press-Enter. Co. v. Superior Court of California for Riverside Cnty.</u>, 478 U.S. 1, 10, 14 (1986), such as national security.

[3] In dicta, the Supreme Court noted, in <u>Richmond Newspapers, Inc. v. Virginia</u>, 448 U.S. 555, 580, n.17 (1980), "that historically both civil and criminal trials have been presumptively open."

therefore, significant deference is owed to its determinations. What the Government is really saying is that its classification system trumps the decisions of the federal courts as to the public's access to official court records; in other words, the Executive Branch (in this case, the Military) purports to be a law unto itself.

Chief Justice John Marshall, long ago, in 1803, explained this concept far better than this Court ever could:

> It is emphatically the province and duty of the judicial department to say what the law is. . . . So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.

Marbury v. Madison, 5 U.S. 137, 177-78, 2 L.Ed. 60 (1803).

      c.      Aside from being repetitive,[4] speculative, and extremely vague, the new declarations spend most of their time reciting examples of harassment and abuse of individual employees and military people working at Guantanamo Bay. There is no question that over those many years, there have been incidents where detainees have bit, hit, spit on, defecated on, urinated on and vomited on the hard-working people who serve at that facility. Guantanamo is, assuredly, not a desirable assignment. However, put in context there is no information provided in the new declarations about how often those events occur or whether they have caused serious bodily injury. Nor do the new declarations provide any concrete information or examples of particular incidents at Guantanamo Bay that have motivated extremist and/or insurgent groups to engage in violence

---

[4] Some of that verbiage is almost identical to the original declarations.

against United States personnel; the same is true as to the absence of any information about detainees developing countermeasures to the FCE tactics, techniques, and procedures used at Guantanamo Bay.[5]

One particular example given in the declarations is flat out unbelievable, namely, that if the videos are released, Mr. Dhiab's privacy would be invaded. Mr. Dhiab has already clearly stated, in no uncertain terms, that "I want Americans to see what is going on at the prison today, so they will understand why we are hunger-striking, and why the prison should be closed. If the American people stand for freedom, they should watch these tapes. If they truly believe in human rights, they need to see these tapes."

        d.       The Court of Appeals in its Opinion gave this Court the "opportunity to consider the supplemental declarations that the Government submitted in support of its motion for a stay." Dhiab, 787 F.3d at 567. Having reviewed those new declarations in their entirety, the Court concludes that they offer little, if any, additional factual support to the Government's Opposition to unsealing the videotapes at issue. To put it bluntly, while the Government added a great deal more

---

[5] It is true that the declarations did mention some specific instances where ISIL took actions containing Guantanamo Bay imagery in order to spread its anti-American propaganda to a global audience. However, when testifying before Congress recently, General John Kelly, commander of the U.S. Southern Command, was asked if Guantanamo Bay is being used "by our enemies as a recruitment tool." He gave the following chilling answer:

> Islamic terrorists are focused on doing us so much harm, not because of Guantanamo Bay or wherever we house these guys; it's really about us, as a people, as a country. . . . [T]hey don't need Guantanamo Bay to hate us.

*Hearing to Receive Testimony on U.S. Northern Command and U.S. Southern Command in Review of the Def. Authorization Request for Fiscal Year 2016 and the Future Years Def. Program Before the S. Comm. on Armed Services,* 113th Cong. 90-91 (2015), http://www.armed-services.senate.gov/imo/media/doc/15-25%20-%203-12-15.pdf.

verbiage to the later declarations, its message remains the same. The declarations merely repeat the Government's fears and speculations "that release of the videos 'could (1) motivate extremist and insurgent groups to engage in violence against U.S. personnel; (2) lead to detainees developing countermeasures to FCE tactics, techniques and procedures; and (3) increase detainee resistance requiring more frequent FCEs," as well as invade the privacy of the men being detained at Guantanamo Bay. Govt.'s Reply in Support of Mot. for Reconsideration at 2 [Dkt. No. 397].

      e.      Finally, the importance of releasing the videotapes to the public in order to "enlighten the citizenry" and "improve perceptions of the proceeding's fairness," cannot be overstated. Dhiab v. Obama, 70 F. Supp. 3d 486, 495 (D.D.C. 2014) (quoting New York Times Co. v. United States, 403 U.S. 713, 728 (1971)). The detention and treatment for many years at Guantanamo Bay of individuals who have never been charged with a crime has been a burning, controversial issue in this country. From the beginning of their intervention in this case, Intervenors have emphasized the importance of their efforts to access the Court's videotapes[6] in order to "evaluate the creditability" of Dhiab's allegations, to "assess the fairness" of his treatment "by the court," and to provide oversight of "the institutions of government." Dkt. 263-1 at 17-18.

Transparency about the actions of our government--including the judiciary--is one of the cornerstones of our democracy. This Court has found that the Government's justifications for barring the American public from seeing the videotapes are not sufficiently rational and plausible to justify barring release of the videotapes, which are part of the Court's official records, from the eyes and ears of the American public. As Justice Stewart said in the Pentagon Papers case:

---

[6] No objection was ever raised by the Government to including the videotapes in the record of the evidentiary hearing on Mr. Dhiab's Motion for Preliminary Injunction.

> In the absence of the governmental checks and balances present in other areas of our national life, the only effective restraint upon executive policy and power in the areas of national defense and international affairs may be in an enlightened citizenry -- in an informed and critical public opinion which alone can . . . protect the values of democratic government.

New York Times Company v. United States, 91 S.Ct. 2140, 2148 (1971).

For all these reasons, the Court concludes that the Motion to Reconsider is **denied**.


October 27, 2015                                      /s/ Gladys Kessler
                                                      Gladys Kessler
                                                      United States District Judge

**Copies via ECF to all counsel of record**